Citation Nr: 1237396 
Decision Date: 10/31/12 Archive Date: 11/09/12

DOCKET NO. 03-01 548 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in St. Petersburg, Florida


THE ISSUE

Entitlement to a rating in excess of 10 percent for residuals of shell fragment wound to the right leg, with injury to muscle group XIV.


REPRESENTATION

Appellant represented by: Disabled American Veterans


ATTORNEY FOR THE BOARD

Robert J. Burriesci, Counsel


INTRODUCTION

The Veteran served on active duty from October 1964 to October 1966. He is the recipient of the Combat Infantryman Badge and the Purple Heart.

This matter comes before the Board of Veterans' Appeals (Board) on appeal from a rating decision issued in December 2001 by the Department of Veterans Affairs (VA) Regional Office (RO) in Cleveland, Ohio. Jurisdiction over the Veteran's case was subsequently transferred to the St. Petersburg, Florida, RO.

In December 2005, the Board denied the claim of entitlement to a rating in excess of 10 percent for residuals of shell fragment wound to the right leg, with injury to Muscle Group XIV and the Veteran thereafter appealed to the United States Court of Appeals for Veterans Claims (Court). In August 2006, the parties (the Secretary of VA and the Veteran) filed a Joint Motion for Remand with the Court, which was granted by Order of the Court in September 2006. In December 2006, April 2009, September 2010, and March 2012 the Board remanded the case to the agency of original jurisdiction (AOJ) for additional development, and it now returns to the Board for appellate review.


FINDINGS OF FACT

1. The record does not reveal that the Veteran was hospitalized for a prolonged period of time for the treatment of his injury to muscle group XIV nor do they reveal any prolonged infection, sloughing of soft parts, or intramuscular scarring.

2. During the period on appeal, the Veteran's residuals of shell fragment wound to the right leg, with injury to muscle group XIV, manifested lower fatigue threshold and occasional pain-fatigue.

3. At no point during the period on appeal did the Veteran's residuals of shell fragment wound to the right leg, with injury to muscle Group XIV, manifest fascial defects or evidence of fascial defects or impairment of the muscle substance or muscle function.



CONCLUSION OF LAW

The criteria for a disability rating in excess of 10 percent for residuals of shell fragment wound to the right leg, with injury to muscle group XIV, have not been met. 38 U.S.C.A. §§ 1154(a), 1155, 5107 (West 2002); 38 C.F.R. §§ 3.102, 3.321, 4.14, 4.55(a), 4.71a, 4.73, Diagnostic Code 5314 (2012).


REASONS AND BASES FOR FINDINGS AND CONCLUSION

I. Duties to Notify and Assist

As provided for by the Veterans Claims Assistance Act of 2000 (VCAA), VA has a duty to notify and assist claimants in substantiating a claim for VA benefits. 38 U.S.C.A. §§ 5100, 5102, 5103, 5103A, 5107, 5126 (West 2002 & Supp. 2012); 38 C.F.R. §§ 3.102, 3.156(a), 3.159 and 3.326(a) (2012). 

Upon receipt of a complete or substantially complete application for benefits, VA is required to notify the claimant and his or her representative, if any, of any information, and any medical or lay evidence, that is necessary to substantiate the claim. 38 U.S.C.A. § 5103(a); 38 C.F.R. § 3.159(b); Quartuccio v. Principi, 16 Vet. App. 183 (2002). Proper notice from VA must inform the claimant of any information and evidence not of record (1) that is necessary to substantiate the claim; (2) that VA will seek to provide; and (3) that the claimant is expected to provide in accordance with 38 C.F.R. § 3.159. This notice must be provided prior to an initial unfavorable decision on a claim by the agency of original jurisdiction (AOJ). Mayfield v. Nicholson, 444 F.3d 1328 (Fed. Cir. 2006); Pelegrini v. Principi, 18 Vet. App. 112 (2004). 

In Dingess v. Nicholson, 19 Vet. App. 473 (2006), the Court held that, upon receipt of an application for a service-connection claim, 38 U.S.C.A. § 5103(a) and 38 C.F.R. § 3.159(b) require VA to review the information and the evidence presented with the claim and to provide the claimant with notice of what information and evidence not previously provided, if any, will assist in substantiating, or is necessary to substantiate, each of the five elements of the claim, including notice of what is required to establish service connection and that a disability rating and an effective date for the award of benefits will be assigned if service connection is awarded. 

In a claim for an increased evaluation, the VCAA requirement is generic notice, that is, the type of evidence needed to substantiate the claim, namely, evidence demonstrating a worsening or increase in severity of the disability and the effect that worsening has on employment, as well as general notice regarding how disability ratings and effective dates are assigned. Vazquez-Flores v. Shinseki, 580 F.3d 1270 (Fed. Cir. 2009).

Here, the duty to notify was not satisfied prior to the initial unfavorable decision on the claim by the AOJ. Under such circumstances, VA's duty to notify may not be "satisfied by various post-decisional communications from which a claimant might have been able to infer what evidence the VA found lacking in the claimant's presentation." Rather, such notice errors may instead be cured by issuance of a fully compliant notice, followed by readjudication of the claim. See Mayfield v. Nicholson, 444 F.3d 1328 (Fed. Cir. 2006) (where notice was not provided prior to the AOJ's initial adjudication, this timing problem can be cured by the Board remanding for the issuance of a VCAA notice followed by readjudication of the claim by the AOJ) see also Prickett v. Nicholson, 20 Vet. App. 370, 376 (2006) (the issuance of a fully compliant VCAA notification followed by readjudication of the claim, such as an SOC or SSOC, is sufficient to cure a timing defect). 

In this case, the VCAA duty to notify was satisfied subsequent to the initial AOJ decision by way of a letters sent to the appellant in April 2001, January 2007 and November 2008 that fully addressed all notice elements. The letters informed the appellant of what evidence was required to substantiate the claims and of the appellant's and VA's respective duties for obtaining evidence. Although the notice letters dated in January 2007 and November 2008 were not sent before the initial AOJ decision in this matter, the Board finds that this error was not prejudicial to the appellant because the actions taken by VA after providing the notice have essentially cured the error in the timing of notice. Not only has the appellant been afforded a meaningful opportunity to participate effectively in the processing of his claim and given ample time to respond, but the AOJ also readjudicated the case by way of a supplemental statement of the case issued in December 2011 after the notice was provided. For these reasons, it is not prejudicial to the appellant for the Board to proceed to finally decide this appeal as the timing error did not affect the essential fairness of the adjudication. 

VA has a duty to assist the Veteran in the development of the claim. This duty includes assisting the Veteran in the procurement of service treatment records and pertinent treatment records and providing an examination when necessary. 38 U.S.C.A. § 5103A; 38 C.F.R. § 3.159. 

The Board finds that all necessary development has been accomplished, and therefore appellate review may proceed without prejudice to the appellant. See Bernard v. Brown, 4 Vet. App. 384 (1993). The RO has obtained VA treatment records. The Veteran submitted private treatment records from the Federal Law Enforcement Training Center and Drs. J.S., R.C., and D.M. The appellant was afforded VA medical examinations in April 2001, August 2001, December 2003, August 2008, February 2011, and June 2012. 

The Board notes that in December 2006, the case was remanded for updated records to be obtained and associated with the claims file. Subsequent to this remand, additional records were obtained and associated with the claims file.

In April 2009 the Board remanded the case for consideration of whether the Veteran was entitled to a rating for a muscle injury involving additional muscle groups below the right knee as the medical evidence of record showed that the Veteran sustained a through and through gunshot wound of the right calf. In September 2010 the Board remanded for an adequate supplemental statement of the case providing all pertinent regulations regarding rating muscle groups and the rating of the Veteran's scar. In addition, the Board found the August 2008 examination to be inadequate because it did not contemplate muscle group XIV. Subsequently, the Veteran was afforded a VA examination in February 2011 and an adequate supplemental statement of the case was issued in December 2011.

In March 2012 the Board remanded the case for additional treatment records to be obtained and associated with the claims file and for the Veteran to be afforded an adequate VA medical examination regarding muscle group XIV. Subsequently, additional VA treatment records were obtained and associated with the claims file and the Veteran was afforded a VA medical examination in June 2012.

Therefore, based on the foregoing actions, the Board finds that there has been substantial compliance with the Board's December 2006, April 2009, September 2010, and March 2012 remands. See Dyment v. West, 13 Vet. App. 141 (1999) (noting that a remand is not required under Stegall v. West, 11 Vet. App. 268 (1998) where the Board's remand instructions were substantially complied with), aff'd, Dyment v. Principi, 287 F.3d 1377 (2002).

Significantly, neither the appellant nor his representative has identified, and the record does not otherwise indicate, any additional existing evidence that is necessary for a fair adjudication of the claim that has not been obtained. Hence, no further notice or assistance to the appellant is required to fulfill VA's duty to assist the appellant in the development of the claim. Smith v. Gober, 14 Vet. App. 227 (2000), aff'd 281 F.3d 1384 (Fed. Cir. 2002); Dela Cruz v. Principi, 15 Vet. App. 143 (2001); see also Quartuccio v. Principi, 16 Vet. App. 183 (2002).

II. Higher Evaluation

Disability evaluations are determined by the application of a schedule of ratings which is based on average impairment of earning capacity. 38 U.S.C.A. § 1155; 38 C.F.R. Part 4. Separate diagnostic codes identify the various disabilities. Disabilities must be reviewed in relation to their history. 38 C.F.R. § 4.1. Other applicable, general policy considerations are: interpreting reports of examination in light of the whole recorded history, reconciling the various reports into a consistent picture so that the current rating may accurately reflect the elements of disability, 38 C.F.R. § 4.2; resolving any reasonable doubt regarding the degree of disability in favor of the claimant, 38 C.F.R. § 4.3; where there is a question as to which of two evaluations apply, assigning a higher of the two where the disability picture more nearly approximates the criteria for the next higher rating, 38 C.F.R. § 4.7; and, evaluating functional impairment on the basis of lack of usefulness, and the effects of the disabilities upon the person's ordinary activity, 38 C.F.R. § 4.10. See Schafrath v. Derwinski, 1 Vet. App. 589 (1991).

Where entitlement to compensation has already been established and an increase in the disability rating is at issue, the present level of disability is of primary concern. See Francisco v. Brown, 7 Vet. App. 55, 58 (1994). However, when an appeal arises from the initially assigned rating, consideration must be given as to whether staged ratings should be assigned to reflect entitlement to a higher rating at any point during the pendency of the claim. Fenderson v. West, 12 Vet. App. 119 (1999). Moreover, staged ratings are appropriate in any increased-rating claim in which distinct time periods with different ratable symptoms can be identified. Hart v. Mansfield, 21 Vet. App. 505 (2007).

Pyramiding, the evaluation of the same disability, or the same manifestation of a disability, under different diagnostic codes, is to be avoided. 38 C.F.R. § 4.14. It is possible, however, for a Veteran to have separate and distinct manifestations attributable to the same injury, which would permit a rating under several diagnostic codes. The critical element permitting the assignment of multiple ratings under several diagnostic codes is that none of the symptomatology for any one of the conditions is duplicative or overlapping with the symptomatology of the other condition. Esteban v. Brown, 6 Vet. App. 259, 261-62 (1994). 

When there is an approximate balance of positive and negative evidence regarding any issue material to the determination of a matter, the Secretary shall give the benefit of the doubt to the claimant. 38 U.S.C.A. § 5107(b); 38 C.F.R. § 3.102; see also Gilbert v. Derwinski, 1 Vet. App. 49 (1990).

The Veteran is in receipt of service connected benefits for residuals of a shell fragment wound to the right leg, with injury to muscle group XIV, evaluated as 10 percent disabling, pursuant to 38 C.F.R. § 4.73, Diagnostic Code 5314.

When determining the severity of musculoskeletal disabilities such as the one at issue, which is at least partly rated on the basis of range of motion, VA must also consider the extent the Veteran may have additional functional impairment above and beyond the limitation of motion objectively demonstrated due to the extent of pain/painful motion, limited or excess movement, weakness, incoordination, and premature/excess fatigability, etc., particularly during times when his symptoms "flare up," such as during prolonged use, and assuming these factors are not already contemplated in the governing rating criteria. See also 38 C.F.R. §§ 4.40, 4.45 (2012). 

Muscle injuries are evaluated pursuant to criteria at 38 C.F.R. §§ 4.55, 4.56, and 4.73 (2012). For rating purposes, the skeletal muscles of the body are divided into 23 muscle groups in 5 anatomical regions: 6 muscle groups for the shoulder girdle and arm (diagnostic codes 5301 through 5306); 3 muscle groups for the forearm and hand (diagnostic codes 5307 through 5309); 3 muscle groups for the foot and leg (diagnostic codes 5310 through 5312); 6 muscle groups for the pelvic girdle and thigh (diagnostic codes 5313 through 5318); and 5 muscle groups for the torso and neck (diagnostic codes 5319 through 5323). 38 C.F.R. § 4.55(b). The specific bodily functions of each group are listed at 38 C.F.R. § 4.73. 

Under diagnostic codes 5301 to 5323, muscle injury disabilities are rated as slight, moderate, moderately severe or severe according to criteria based on the type of injury, the history and complaint, and objective findings. 38 C.F.R. § 4.56(d). 

A slight muscle disability is one where the injury was a simple wound of muscle without debridement or infection. The service department record would show a superficial wound with brief treatment and return to duty. There would be healing with good functional results. There are no cardinal signs or symptoms of muscle disability as defined in 38 C.F.R. § 4.56(c). Objectively, there would be a minimal scar, with no evidence of fascial defect, atrophy, or impaired tonus. There would be no impairment of function, or metallic fragments retained in muscle tissue. 

A moderate muscle disability is one where the injury was either through and through, or a deep penetrating wound of short track from a single bullet, small shell or shrapnel fragment, without the effect of high velocity missile, residuals of debridement, or prolonged infection. The service department record (or other evidence) would show in service treatment for the wound. There would be a consistent complaint of one or more of the cardinal signs or symptoms of muscle disability as defined in 38 C.F.R. § 4.56(c), particularly a lowered threshold of fatigue after average use, affecting the particular functions controlled by the injured muscles. Objectively, the entrance (and if present, exit) scars would be small or linear, indicating short track of missile through muscle tissue. Some loss of deep fascia or muscle substance, or impairment of muscle tonus and loss of power or lowered threshold of fatigue when compared to the sound side would be present. 

A moderately severe muscle disability is one where the injury was either through and through, or a deep penetrating wound by a small high velocity missile or large low velocity missile, with debridement, prolonged infection, or sloughing of soft parts, and intramuscular scarring. The service department record (or other evidence) would show hospitalization for a prolonged period for treatment of the wound. There would be a consistent complaint of cardinal signs or symptoms of muscle disability as defined in 38 C.F.R. § 4.56(c), and, if present, an inability to keep up with work requirements. Objectively, the entrance (and if present, exit) scars would indicate the track of missile through one or more muscle groups. There would be indications on palpation of loss of deep fascia, muscle substance, or normal firm resistance of muscles compared with sound side. Tests of strength and endurance compared with sound side demonstrate positive evidence of impairment. 

A severe muscle disability is one where the injury was either through and through, or a deep penetrating wound due to a high velocity missile, or large or multiple low velocity missiles, or one with a shattering bone fracture or open comminuted fracture with extensive debridement, prolonged infection, or sloughing of soft parts, intramuscular binding and scarring. The service department record (or other evidence) would show hospitalization for a prolonged period for treatment of the wound. There would be a consistent complaint of cardinal signs or symptoms of muscle disability as defined in 38 C.F.R. § 4.56(c), which would be worse than that shown for moderately severe injuries, and, if present, an inability to keep up with work requirements. Objectively, there would be ragged, depressed and adherent scars, indicating wide damage to muscle groups in the missile track. Palpation would show loss of deep fascia or muscle substance, or soft flabby muscles in the wound area. Muscles would swell and harden abnormally in contraction. Tests of strength, endurance, or coordinated movements compared with the corresponding muscles of the uninjured side would indicate severe impairment of function. If they happen to be present, the following would also be signs of severe muscle injury: (A) X-ray evidence of minute multiple scattered foreign bodies indicating intramuscular trauma and explosive effect of missile. (B) Adhesion of scar to one of the long bones, scapula, pelvic bones, sacrum or vertebrae, with epithelial sealing over the bone rather than true skin covering in an area where bone is normally protected by muscle. (C) Diminished muscle excitability to pulsed electrical current in electrodiagnostic tests. (D) Visible or measurable atrophy. (E) Adaptive contraction of an opposing group of muscles. (F) Atrophy of muscle groups not in track of the missile, particularly of the trapezius and serratus in wounds of the shoulder girdle. (G) Induration or atrophy of an entire muscle following simple piercing by a projectile. 

Generally, the combined evaluation of muscle groups acting on a single unankylosed joint must be lower than the rating for unfavorable ankylosis of that joint, except when muscles groups I and II are acting on the shoulder. 38 C.F.R. § 4.55(d). When compensable muscle group injuries are in the same anatomical region, but do not act on the same joint, the rating for the most severely injured muscle group will be increased by one level, and used as the combined evaluation for all affected muscle groups. 38 C.F.R. § 4.55(e). Otherwise, for muscle group injuries in different anatomical regions (not acting on ankylosed joints), each injury is separately rated, and ratings are then combined under VA's "combined ratings table" at 38 C.F.R. § 4.25, for the purposes of determining schedular compensation ratings. 

Diagnostic Code 5314 pertains to muscle group XIV which includes the interior thigh muscles, including (1) Sartorius , (2) rectus femoris, (3) vastus externus, (4) vastus intermedius, (5) vastus internus, and (6) tensor vaginae femoris. The functions of the group are extension of the knee, simultaneous flexion of hip and flexion of knee, tension of fascia lata and iliotibial (Maissiat's) band, acting with XVII in postural support of body, and acting with hamstrings in synchronizing hip and knee. 38 C.F.R. § 4.73.

Under Diagnostic Code 5314, a 10 percent rating is warranted for a moderate disability, a 30 percent rating is warranted for a moderately severe disability, and a 40 percent rating is warranted for a severe disability. 38 C.F.R. § 4.73, Diagnostic Code 5314.

The Board notes that the Veteran was afforded a VA Compensation and Pension (C&P) muscle examination in April 2001. The Veteran was noted to have had a shell fragment wound to his right calf in Vietnam in 1965. Nothing was broken or fractured, no artery, nerve, or bone damage noted. However, the Board notes that this examination did not discuss muscle group XIV.

X-ray examination in April 2001 revealed right hip and femur within normal limits.

In August 2001 the Veteran was afforded a VA C&P muscle examination. The Veteran was noted to have had a right thigh wound in 1966 in Vietnam. The examiner guessed that muscle group XIV was involved. The wound was noted to be very small, punctate wounds. Over the years he had some aching and pain in the thigh, but that had been very minimal. He was able to be up and about and function normally with it. He was noted to work as a bailiff. There were no specific flare-ups. He reported more aching and soreness as time progressed. 

Physical examination revealed two punctate wounds of the distal anterior right thigh that involve muscle group XIV. There was no muscle damage, no muscle loss, and no neurovascular or bone injury. Muscle strength was normal and there was no evidence of muscle hernia. He could toe and heel walk and squat holding on for support. There was normal motion of the right knee. The Veteran was diagnosed with residual shell fragment wound, right thigh, involving muscle group XIV.

In a statement on the Substantive Appeal on a VA Form 9, dated in December 2002, the Veteran indicated that he could not walk or run for any distance as required by his employer due in part to his thigh disability.

In December 2003 the Veteran was afforded a VA C&P muscles examination. The Veteran was noted to have a through and through gunshot wound of the right lower extremity, with muscle involvement of muscle group XIV. The wound was noted to go through the right calf. He was treated and debrided and returned to duty in five days. The Veteran had cramping of the lower extremities on exertion after walking 200 yards and also suffered from diabetes mellitus type II with peripheral neuropathy of the upper and lower extremities, the toes, plantar, and ankle areas. The Veteran was noted to have slight decrease of muscle mass of the right compared to the left lower calf muscle. He had mild pain and discomfort upon excessive walking and also mild fatigue that was relieved with elevation of the feet. He also had occasionally mild edema of the lower extremities, no stasis.

Physical examination revealed radial pedal, and popliteal pulses to be normal. There was no tenderness on examination of the scar tissue. There was no bone involvement noted and on examination there was no involvement of the bone structure or vascular structure. He had involvement of muscle group XIV. 

The Veteran was diagnosed with residual scars secondary to through and through gunshot wound of the right calf in 1966; diabetes mellitus type II, with peripheral neuropathy, bilateral hands, and peripheral neuropathy, bilateral lower extremities of the toes, plantar, and ankle areas.

A November 2003 ultrasound of the right lower extremity revealed a partial thrombus in the popliteal vein. In December 2003 the Veteran was noted to have a deep vein thrombosis (DVT).

The Veteran was afforded a VA C&P joints examination in August 2008. The Veteran reported that he has right knee pain and loss of motion. The Veteran was noted to use a cane for walking and that he was unable to stand for more than a few minutes. He was unable to walk more than a few yards. The joint had no deformity, giving way, instability, stiffness, weakness, episodes of dislocation or subluxation, locking, effusion, or inflammation. There were no flare-ups of joint disease and the joint condition did not affect the motion of one or more joints. The Veteran did have right sided knee pain. 

Physical examination revealed that the Veteran had an antalgic gait. There was no evidence of any abnormal weight bearing. The Veteran had active motion against gravity of 0 to 90 degrees. He had passive motion of 0 to 120 degrees with pain beginning at 90 degrees. There was no additional loss of motion with repetitive use. There was no loss of a bone or part of a bone. There was no inflammatory arthritis. There was no joint ankylosis. 

The knee had tenderness, painful movement, abnormal motion, and guarding of movement. There were no bumps consistent with Osgood-Schlatters disease, no crepitation, no mass behind the knee, no clicks or snaps, no grinding, no instability, no patellar abnormality, no meniscus abnormality, and no other tendon or bursa. 

The Veteran was diagnosed with a right knee condition, manifested by loss of motion of the right knee secondary to right leg gunshot wound. The severity was noted to be moderate.

In August 2008 the Veteran was afforded a VA C&P muscle examination. The Veteran was noted to have had a right calf bullet wound in 1966. The Veteran reported progressive weakness and pain in the leg. The medical history noted that the Veteran had debridement of the wound when treated in service in 1966. The Board notes that physical examination was performed; however, muscle group XIV was not discussed in this examination report.

In a May 2010 orthopedic note it was indicated that a March 2010 x-ray revealed a normal right tibia/fibula. An old scar was noted medial and lateral aspect of the mid calf. The Veteran was hypersensitive to very light palpation lateral aspect of the distal femur distally past exit wound lateral side mid calf. The skin was intact and there was a nontender vertebral midline.

X-ray of the right femur was normal in February 2011.

In February 2011 the Veteran was afforded a VA C&P muscle examination. The Veteran was noted to have suffered bilateral lower extremity shrapnel wounds. The Veteran was noted to have had a drain placed to treat the right leg through and through wound at a field hospital in Vietnam. Physical examination was performed; however, muscle group XIV was not discussed in this examination.

In June 2012 the Veteran was afforded a VA C&P muscle examination. The Veteran was noted to have been diagnosed with a shell fragment wound injury to the right leg involving muscle group XIV. The history of the muscle group injury was noted to be a penetrating muscle injury such as a gunshot or shell fragment wound. It was noted that per report in February 1966 the Veteran sustained wounds to the right thigh and lower leg due to shelling injuries. It was stated that the Veteran suffered pain to the mid leg and calf associated with activity and walking. Also reports some sense of restlessness in the right lower extremity particularly when at rest. Also reports a pulsating sensation over the exit wound. No retained fragments per the Veteran. The Veteran was positive for fatigability and weakness with overuse such as prolonged walking. Also complained of pain to the right thigh with activity, similar to but not as severe as in the lower leg and positive for fatigability and weakness. 

The Veteran was found to have an injury to a muscle group of the foot or leg. The Veteran had injury to the right group XII.

The Veteran was found to have an injury to a muscle group of the pelvic girdle or thigh. The Veteran had injury to the right group XIV, anterior thigh muscles including sartorius, rectus femoris, and quadriceps which affect extension of the knee. 

The Veteran was noted to have a scar associated with the injury. The scars were noted to be small or linear, indicating short track of missile through muscle tissue. There were no fascial defects or evidence of fascial defects associated with any muscle injuries. The Veteran's muscle injury did not affect the muscle substance or function. The Veteran had a lowered threshold of fatigue in the right XII and XIV muscle groups that was occasional. He had fatigue-pain in the right XII and XIV muscle groups that was occasional. Knee extension was of normal strength and the Veteran had no muscle atrophy. The Veteran usually used an assistive device with locomotion, although occasional locomotion by other methods was possible. He occasionally used a cane and occasionally used a walker. It was noted that amputation with prosthesis would not equally serve the Veteran. The examiner indicated that there were no other pertinent physical findings, complications, conditions, signs, or symptoms. The examiner found that the muscle injuries do not result in the Veteran being unable to keep up with work requirements. 

The Board finds that entitlement to a rating in excess of 10 percent for residuals of shell fragment wound to the right leg, with injury to muscle group XIV, is not warranted for any period on appeal. At no point in time during the period on appeal does the Veteran's injury to muscle group XIV manifest symptoms more nearly approximate to moderate severe disability. The Board acknowledges that the Veteran's muscle injury results in a lowered fatigue threshold and occasional fatigue-pain. However, there is no evidence that the Veteran was hospitalized in service for a prolonged period of time for the treatment of his wounds. The scars reveal a short track of missile through muscle tissue. The Veteran has not been noted to be unable to keep up with work requirements due to his muscle injuries. There were no fascial defects or evidence of fascial defects associated with any muscle injuries. The Veteran's muscle injury did not affect the muscle substance or function. There is no indication that the Veteran has any bone or nerve injuries associated with his shell fragment wound. As the Board finds that the Veteran's injury to muscle group XIV does not manifest symptoms more nearly approximate to moderately severe disability, entitlement to a rating in excess of 10 percent is denied.

The Board notes that the evaluation of the Veteran's scar associated with his shell fragment wound to the right legs was previously considered by the Board in it March 2012 decision and, therefore, will not be considered here.

The Board has considered whether the Veteran's claim warrants referral to the Chief Benefits Director of VA's Compensation and Pension Service under 38 C.F.R. § 3.321. The Court has clarified the analytical steps necessary to determine whether referral for extraschedular consideration is warranted. See Thun v. Peake, 22 Vet. App. 111 (2008). The Court stated that the RO or the Board must first determine whether the schedular rating criteria reasonably describe the Veteran's disability level and symptomatology. Id. at 115. If the schedular rating criteria do reasonably describe the Veteran's disability level and symptomatology, the assigned schedular evaluation is adequate, referral for extraschedular consideration is not required, and the analysis stops. Id.

The Veteran does not meet the criteria for a higher evaluation for his muscle group disability, and there is no aspect of this disability not contemplated by the schedular criteria.

Furthermore, the Board finds no evidence of any unusual or exceptional circumstances, such as marked interference with employment or frequent periods of hospitalization related to the service-connected disability at issue, that would take the Veteran's case outside the norm so as to warrant an extraschedular rating. Therefore, referral by the RO to the Chief Benefits Director of VA's Compensation and Pension Service, under 38 C.F.R. § 3.321 is not warranted. Id.

Finally, the Court has held that a total disability rating based on individual unemployability (TDIU) is a part of a claim for increased rating. Rice v. Shinseki, 22 Vet. App. 447 (2009). In this case, the Veteran has been awarded TDIU effective November 1, 2003. Although the period on appeal regarding the Veteran's claim of entitlement to a rating in excess of 10 percent for residuals of shell fragment wound to the right leg, with injury to muscle group XIV, extends prior to November 1, 2003, the Veteran has indicated that he was employed prior to November 1, 2003. As there is no evidence of unemployability during the period on appeal prior to November 1, 2003, TDIU is not for consideration.


 (CONTINUED ON NEXT PAGE)



ORDER

Entitlement to a rating in excess of 10 percent for residuals of shell fragment wound to the right leg, with injury to muscle group XIV, is denied.



____________________________________________
MILO H. HAWLEY
Veterans Law Judge, Board of Veterans' Appeals

Department of Veterans Affairs